IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| DANIEL CALVILLO, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 7:22-cv-125-BP |
| § | |
| COMMISSIONER OF § | |
| SOCIAL SECURITY, § | |
| § | |
| Defendant. § | |

**MEMORANDUM OPINION AND ORDER**

Daniel Calvillo ("Calvillo") applied for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income Benefits ("SSI") under the Social Security Act ("SSA"). The Commissioner denied his application initially and upon reconsideration, deciding that he was not disabled. Calvillo appealed. Because the Administrative Law Judge ("ALJ") properly accounted for all of Calvillo's limitations in his residual functional capacity ("RFC") finding and fairly and fully developed the record when determining Calvillo's past relevant work, the Court **AFFIRMS** the Commissioner's decision and **DISMISSES** the case **with prejudice.**

**I.      BACKGROUND**

Sixty-two-year-old Calvillo seeks disability benefits under Title II and Title XVI of the SSA, claiming disability status since February 21, 2019. Soc. Sec. Admin. R. (hereinafter "Tr."), ECF No. 9-1 at 30, 34. He states that he previously had a heart attack and has hypertension. Tr. 12-13. The Commissioner decided that he was not disabled and denied his application initially and upon reconsideration. Tr. 9. Calvillo requested a hearing before an ALJ who conducted the hearing and affirmed the Commissioner's decision. Tr. 25-44, 18. After the Appeals Council denied review (Tr. 1-5), Calvillo filed this civil action seeking judicial review under 42 U.S.C. §§ 405(g) and

416(g). *See* ECF No. 1; *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (citing 20 C.F.R. § 416.1400(a)(5)) ("[T]he Commissioner's decision does not become final until after the Appeals Council makes its decision denying the claimant's request for review.").

## II.      STANDARD OF REVIEW

Titles II and XVI of the SSA govern the DIB and SSI programs, respectively. *See* 42 U.S.C. §§ 401-434, 1381-1383f. Claimants seeking benefits under either program must prove that they are "disabled" within the meaning of the SSA. *See Hollis v. Bowen*, 837 F.2d 1378, 1382 n.3 (5th Cir. 1988) (stating the "relevant law and regulations governing the determination of disability under a claim for [DIB] are identical to those governing the determination under a claim for [SSI]"). A person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord id.* § 1382c(a)(3)(A). To determine whether a claimant is disabled and thus entitled to benefits, the Commissioner employs a sequential five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a).

First, the claimant must not be presently doing any substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "Substantial gainful activity" is work that "involves doing significant physical or mental activities" for pay or profit. *Id.* §§ 404.1572, 416.972. Second, the claimant must have a severe impairment or combination of impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Third, disability exists if the impairment or combination of impairments meets or equals an impairment in the federal regulatory list. *See id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (referencing 20 C.F.R. pt. 404, subpt. P, app. 1).

Before proceeding to steps four and five, the Commissioner assesses the claimant's RFC and considers his past relevant work ("PRW"). *See id.* §§ 404.1520(a)(4), (e)-(f), 416.920(a)(4), (e)-(f). RFC means "the most [a claimant] can still do despite his limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). PRW is work that the claimant has done "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* §§ 404.1560(b)(1), 416.960(b)(1). Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to his PRW considering his RFC. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Fifth, the impairment must prevent the claimant from doing any other relevant work, considering the claimant's RFC, age, work experience, and education. *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing he is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

Judicial review is limited to determining whether the Commissioner applied correct legal standards and whether substantial evidence in the record supports the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis,* 837 F.2d at 1382. "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). "A

finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* (quoting same). The Court may neither reweigh evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Harris,* 209 F.3d at 417; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (alteration in original) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

### III. ANALYSIS

The Commissioner, acting through the ALJ, completed the five-step evaluation process. *See* Tr. 13-18. First, the ALJ found Calvillo has not engaged in substantial gainful activity since February 21, 2019. *Id.* at 11. Second, he found three medically severe impairments: status post myocardial infarction, obesity, and hypertension. *Id*. Third, he identified no impairment or combination of impairments that qualify under the federal regulatory list. *Id.* at 12. He then assessed Calvillo's RFC: "After careful consideration of the entire record, the undersigned finds that the claimant has a residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that the claimant can frequently climb, balance, stop, kneel, crouch, and crawl." Tr. 13.

Using this RFC determination and after hearing the testimony of a vocational expert ("VE"), the ALJ determined at step four that Calvillo could perform PRW, specifically as a garbage collector driver. *Id.* at 17. The step four finding meant that Calvillo was ineligible for DIB or SSI because he was not disabled, a finding that terminated the ALJ's evaluation. *Id.* at 18; *see Lovelace*, 813 F.2d at 58. Calvillo argues that the Court should reverse the ALJ's decision because

substantial evidence in the record did not support the RFC finding and because the ALJ did not fully and fairly develop the record when determining Calvillo's PRW. ECF No. 13 at 20.

### A. The ALJ properly accounted for Dr. Patel's limitations in his RFC finding.

Dr. Aman Patel, the consultative examiner, reported that Calvillo could lift light objects, was limited in walking, and had environmental limitations. Tr. 16, 443. Calvillo argues that the ALJ failed to incorporate these limitations when determining his RFC, and therefore, substantial evidence did not support the RFC finding. ECF No. 13 at 9-11. He asserts further that failure to incorporate the limitations would be a reversible error because an ALJ must incorporate any limitations he finds into his RFC determination. *See* 20 C.F.R. § 404.1545(c) (prior to determining a plaintiff's RFC, an ALJ assesses a plaintiff's mental impairments).

"The well-settled rule in this Circuit is that in making a determination as to disability, the ALJ must analyze both the disabling effect of each of the claimant's ailments and the combined effects of all of these impairments." *Fraga v. Bowen*, 810 F.2d 1296, 1305 (5th Cir. 1987) (citation and quotation marks omitted). Moreover, the ALJ must base his RFC assessment on "all of the relevant evidence in the case record," including, but not limited to, "medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations, and work evaluations." *Athena G. v. Kijakazi*, No. 1:20-CV-00051-BU, 2021 WL 3729033, at *9 (N.D. Tex. 2021), *rec. adopted*, 2021 WL 3726741 (N.D. Tex. 2021); *Eastham v. Comm'r of Soc. Sec. Admin.*, No. 3:10-CV-2001-L, 2012 WL 691893, at *6 (N.D. Tex. 2012) (citing SSR 96-8p), *rec. adopted* 2012 WL 696756 (N.D. Tex. 2012). After evaluating the record, the ALJ determined that Calvillo had moderate limitations. Tr. 13.

Calvillo argues that this finding was erroneous because even though the ALJ found that Dr. Patel's examination of Calvillo supported this conclusion, the ALJ's RFC did not account for

all of the limitations that Dr. Patel found. ECF No. 13 at 10-15. However, there is a difference between acknowledging that an examiner such as Dr. Patel believed that the claimant may have certain limitations and a finding of such a limitation based on the entirety of the record. While Dr. Patel may have diagnosed Calvillo with additional limitations, the ALJ is not required to incorporate any limitations into the RFC that he did not find the record as a whole supported. *Ross-Bennett v. Comm'r of Soc. Sec. Admin.*, No. 4:20-CV-1117-BJ, 2022 WL 4371002, at *4 (N.D. Tex. 2022) (citing *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)). As a result, an ALJ is not obligated to incorporate any one medical opinion verbatim into his RFC. Therefore, the Court need only determine whether the ALJ properly considered all of the limiting effects and restrictions of Calvillo's physical impairments, including the ones posed by Dr. Patel, in his RFC decision before imposing specific limitations.

The Court concludes that the ALJ properly formulated Calvillo's RFC after considering all of the limitations that the ALJ found. The ALJ based his limitations on medical opinions in the record; Calvillo's numerous daily activities; the location, duration, frequency, and intensity of Calvillo's pain and other symptoms; factors that precipitated and aggravated the symptoms; the medication that Calvillo took or had taken to alleviate pain or other symptoms; treatment that he received; and other pain relief methods that Calvillo employed. Tr. 13-14. The RFC recognizes that that Calvillo had difficulty lifting, walking, climbing stairs, and completing tasks, which were the same limitations that Dr. Patel listed. Tr. 14. The ALJ also noted the side effects and symptoms that Calvillo testified about at the ALJ hearing and the fact that Calvillo used a cane. *Id*. However, the ALJ contrasted these limitations with the daily activities that Calvillo noted in his function report: he cleaned his house, drove a car, shopped in stores, paid bills, did the laundry, washed the dishes, finished what he started, followed instructions well, went outside two to three times a day,

watched television, had no problem with personal care, handled stress well, did not need reminders to take care of his personal needs, handled changes in his routine well, got along with authority figures, had never been fired or laid off from a job due to problems getting along with others, did not need to be reminded to take his medicine, and had no problems getting along with others. Tr. 14, 253-61. The ALJ noted that these activities of daily life were inconsistent with Calvillo's allegations of disabling symptoms and limitations. Tr. 14.

The ALJ also analyzed the physical exams that various medical professionals, including Dr. Patel, performed. Tr. 14-17. He ALJ found the medical opinions of state agency medical consultants Dr. Roberta Herman and Dr. Fizzeh Nelson-Desiderio persuasive, concluding that Calvillo could perform the full range of medium exertional work. Tr. 16. The ALJ then evaluated the medical opinion of Dr. Patel, finding his opinion only somewhat persuasive due to their vagueness, lack of an indication of Calvillo's specific limitations, and little insight into Calvillo's RFC. *Id*. at 16-17. Finally, the ALJ restated the numerous daily activities that Calvillo completed and stated how the objective medical evidence and Calvillo's daily activities were inconsistent with his subjective allegations of debilitating pain and disability.

The ALJ's discussion of Dr. Patel's medical opinion and the acknowledgement of the difficulties that Dr. Patel stated that Calvillo faced shows that he considered Dr. Patel's limitations when developing the RFC. Additionally, the record reflects that the ALJ based his RFC determination on the entirety of the record and the limitations he found from analyzing all of the evidence before concluding that Calvillo's limitations were moderate. Therefore, because an ALJ's RFC determination need not mirror the medical opinion of one doctor to have properly incorporated all of a claimant's limitations, the Court concludes substantial evidence supports the

ALJ's finding of moderate limitations, which properly incorporated all of the limitations that the ALJ found.

> B. **The ALJ's hypothetical question to the VE was proper because he based it on the limitations that he had found previously.**

Calvillo claims that the ALJ erred in his hypothetical question to the VE because he did not include the limitations on lifting, carrying, or handling light objects that Dr. Patel found in his medical report. ECF No. 13 at 11-12. Therefore, Calvillo argues that the ALJ's Step Four finding that Calvillo could perform PRW was legally erroneous and not based on substantial evidence. *Id*. at 13.

When a VE's answer to a hypothetical question forms the basis of an ALJ's determination of non-disability, the question is defective and constitutes reversible error if (1) it did not reasonably incorporate all of the claimant's disabilities that the ALJ has recognized or (2) the claimant or his representative did not have an opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the VE any defects in the question. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir.1994). An ALJ need not include in a hypothetical question a limitation that the record does not support. *Ross-Bennet*, 2022 WL 4371002 at *4. Because the ALJ did not find that the record supported Dr. Patel's additional limitations on Calvillo's ability to lift, carry, or handle light objects, he did not err in not incorporating the limitations into the hypothetical. Moreover, Calvillo's representative was present at the hearing, could have corrected any deficiencies in the ALJ's question, and in fact clarified the question by noting that Calvillo would need a commercial driver's license ("CDL") to perform work as a garbage collector driver. Tr. 43.

8

Thus, the ALJ's hypothetical question to the VE was proper since it included the limitations that the ALJ recognized from the record and Calvillo's representative had every opportunity to correct any deficiencies in the question.

### C. The ALJ properly developed the record in determining Calvillo's PRW.

The ALJ must fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *Id*. However, the Court does not hold the ALJ to procedural perfection. *Id*. Reversal is necessary only where substantial evidence does not support the ALJ's decision and the claimant can show that the lack of a fully and fairly developed record prejudiced the claimant. *See Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012).

Calvillo argues that the ALJ did not fully and fairly develop the record before determining that he could perform PRW as a garbage truck driver. ECF No. 13 at 15. More specifically, Calvillo argues that the PRW required him to possess a CDL, and the record failed to contain sufficient information to determine if Calvillo could obtain that license given his physical condition and the requirement that he pass a stress test. ECF Nos. 13 at 17, 15 at 4-5; Tr. 43. Additionally, Calvillo argues that the undeveloped record prejudiced him because the ALJ otherwise might have found that he was incapable of obtaining a CDL based on his physical limitations, and therefore, would not have been able to find work in the economy. *Id*. at 19-20.

Calvillo's argument is unpersuasive because it is unclear what additional information the ALJ must have obtained to "fully and fairly develop the record." The record that the ALJ relied on in this case already consists of almost 300 pages of reliable medical evidence. ECF No. 9. This included the medical opinions of state agency medical consultants who noted that Calvillo experienced chest pain and dizziness, but also stated that he was alert, oriented, and had a regular

9

heart rate and rhythm, regular and non-labored breathing, clear lungs, normal gait, normal strength, full range of motion, and no joint swelling or erythema. Tr. 16, 45-57, 58-70, 73-88, 89-104. Additionally, after his heart attack, Calvillo underwent a cardiac catheterization, and the follow-up appointment showed that his lung capacity, heart functioning, gait, and strength were all back to normal. Tr. 423-25. This report also stated that Calvillo was doing well from a cardiovascular standpoint. *Id*.

The record also shows that in 2021, an echocardiogram demonstrated that while Calvillo had mild concentric left ventricle hypertrophy and a sclerotic aortic valve, the valve opened well, his estimated ejection fraction was sixty-two percent, the intra-atrial septum was intact, the cardiac chambers were normal in size, and there were no intracardiac masses. Tr. 15, 434. During that visit, Calvillo had clear lungs, regular heart rate, full motor strength, steady and symmetric gait, normal ranges of motion, and did not use an assistive device. *Id*. Finally, the record also contains Calvillo's own testimony that he performed the activities of daily living mentioned previously.

In addition to the medical records, the ALJ also relied on the testimony at the administrative hearing to reach his decision. In the hearing, Calvillo noted that the only medication he took was Tylenol and that he still drove a pickup truck similar to the one that he drove at his previous employer. Tr. 33, 36. He also explained that the reasons why he has not gone back to work, including back and leg pain and shortness of breath. Tr. 35. After Calvillo's testimony, the ALJ asked the VE whether based on the evidence in the record and Calvillo's testimony at the hearing, including his testimony that he currently did not have a CDL, the VE believed that Calvillo would be able to work as a garbage collector driver. The VE responded that he would. Tr. 42.

No doubt the ALJ could have posed other probing questions at the hearing or taken additional steps to inquire about the requirements of Calvillo's past work. However, the Court

must balance the ALJ's duty to develop the record fully and fairly "against the fact that claimants bear the burden of proof up through step 4 of the evaluation process." *Holifield v. Astrue*, 402 F. App'x 24, 26 (5th Cir. 2010) (citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)). At the hearing, Calvillo had the burden to prove that he was no longer capable of performing PRW due to an inability to obtain a CDL. *See* Newton, 209 F.3d at 453. His lawyer was present and could have developed additional testimony clarifying or elaborating on whether Calvillo could pass a stress test given his alleged limitations. However, he did not to do so. *See* Tr. 27-44.

Finally, Calvillo was not prejudiced by the fact that the ALJ only relied on the evidence already in the record because he had ample opportunity to supplement the record with any additional evidence showing that he likely would not pass a stress test. *See Holifield*, 402 F. App'x at 26-27 (holding that the plaintiff had apply time to supplement the record with additional evidence and therefore could not establish prejudice). But again, he did not do so. Thus, given the extensive medical reports relating to Calvillo's physical health, his personal testimony regarding his daily activities, and the VE's testimony regarding Calvillo's ability to work as a garbage collector driver, the ALJ fully and fairly developed the record. There was substantial evidence for the ALJ to determine Calvillo's PRW. Even if there were any shortcomings of the ALJ in developing the record, none of them prejudiced Calvillo such that the Court should reverse the ALJ's decision on this point.

## IV.     CONCLUSION

The ALJ properly accounted for Dr. Patel's limitations in his residual functional capacity finding and fairly and fully developed the record when determining Calvillo's past relevant work. The ALJ applied correct legal standards, and substantial evidence in the record supports the ALJ's

decision. The Court therefore **AFFIRMS** the Commissioner's decision and **DISMISSES** the case **with prejudice.**

It is so **ORDERED** on April 24, 2023.

_Hal R. Ray, Jr._
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE